IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| TERRAL Y. ALEXANDER, | Civil Action No. 3:09-1992-RMG-JRM |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY | |
| Defendant. | |

This case is before the Court pursuant to Local Rule 83.VII.02, et seq., D.S.C., concerning the disposition of Social Security cases in this District. Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his claims for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB").

## ADMINISTRATIVE PROCEEDINGS

Plaintiff filed applications for SSI and DIB on September 9, 2005, alleging disability since September 21, 2004. Plaintiff's applications were denied initially and on reconsideration, and he requested a hearing before an administrative law judge ("ALJ"). After a hearing held July 15, 2008, at which Plaintiff appeared and testified, the ALJ issued a decision dated December 4, 2008, denying benefits and finding that Plaintiff was not disabled. The ALJ, after hearing the testimony of a vocational expert ("VE"), concluded that work exists in the national economy which Plaintiff could perform.

Plaintiff was forty-five years old at the time of the ALJ's decision. He attended high school through the twelfth grade and later received his GED. He has past relevant work as a machine operator. Plaintiff alleges disability due to injuries sustained in an automobile accident. (Tr. 27).

The ALJ found (Tr. 13-19):

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.

2. The claimant has not engaged in substantial gainful activity since September 21, 2004, the alleged onset date (20 CFR 404.1571 *et seq.*, 416.971 *et seq.*).

3. The claimant has the following severe combination of impairments: he is status post a motor vehicle accident with cervical lumbar strain (20 CFR 404.l521, *et. seq.* and 416.921 *et. seq.*).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 C.F.R. 404.1567(c) and 416.967(c). The claimant can frequently perform all postural activities, except he can only stoop occasionally. The claimant would be limited to simple, repetitive, routine tasks in a low stress work environment such as non-production work with only occasional interaction with the public. These limitations are based on Exhibits 18F and 19F.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on November 6, 1963 and was 41 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has

> transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

On June 17, 2009, the Appeals Council denied Plaintiff's request for review, making the decision of the ALJ the final decision of the Commissioner. Plaintiff filed this action on January 29, 2009.

## STANDARD OF REVIEW

The only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389 (1971) and Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). Under 42 U.S.C. §§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, Plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months...." See 20 C.F.R. § 404.1505(a) and Blalock v. Richardson, supra.

## MEDICAL EVIDENCE

Plaintiff sustained injuries in a car accident in September 2004. His primary care provider, Henry Ramirez, a physician's assistant ("PA") at Oconee Family Practice, diagnosed Plaintiff with cervical whiplash, lumbar strain, and abdominal contusion. Tr. 311. X-rays of Plaintiff's cervical and thoracic spine were normal. Tr. 310. Mr. Ramirez prescribed an injection of Decadron-LA,

3

continuation of Flexeril, and physical therapy on September 27, 2004. A note for Plaintiff to remain out of work for a week was provided. Tr. 311. This work release was extended, as Plaintiff was found to not be fully recovered at follow-up appointments in September and October 2004. Treatment included steroid injections, Darvocet, and physical therapy. Tr. 312.

Plaintiff reported feeling much better on October 27, 2004, and Mr. Ramirez released Plaintiff to full-duty work as of November 1, 2004. Tr. 314. On November 2, 2004, Plaintiff complained of persisting back pain. Mr. Ramirez noted that Plaintiff had lower back tenderness and extended the work release until December 1, 2004. Tr. 314. During physical therapy sessions from October to December 2004, Plaintiff continued to report improvement in his back condition. Tr. 240-254. On December 1, 2004, Plaintiff reported feeling better, Mr. Ramirez noted that Plaintiff's back strain was resolved, and Plaintiff was released to full duty work. Tr. 314.

Plaintiff returned to work, but complained to Mr. Ramirez of persistent back pain with radiation into his legs on December 20, 2004. Upon examination, Mr. Ramirez noted increased muscle tenderness in Plaintiff's back and positive straight leg raise testing (indicating a likely herniated disc). Mr. Ramirez diagnosed Plaintiff with resolved neck muscle spasms and thoracic and lumbar strains. He prescribed Relafen (a non-steroidal anti-inflammatory medication), Soma (a muscle relaxant), and Ultram and Lortab (narcotic pain medications). Mr. Ramirez scheduled an MRI of Plaintiff's back and provided a note releasing Plaintiff from work until January 4, 2005. Tr. 313. An MRI of Plaintiff's lower back the same day revealed a disc protrusion likely contacting the nerve root, with no spinal stenosis or other evident neural compromise. Tr. 322. An MRI of Plaintiff's upper back was unremarkable on December 29, 2004. Tr. 324.

4

Dr. Daxis Banit, an orthopaedist, began treating Plaintiff in January 2005. Dr. Banit's impressions included knee contusion with crepitation on motion, disc protrusion in Plaintiff's lower back with no associated radicular findings, some degenerative changes in Plaintiff's lower back and neck, and shoulder contusion with mild loss of internal rotation consistent with tendinitis of the rotator cuff. Straight leg raise testing was negative. Plaintiff was referred for epidural injections and his pain medications were renewed. Dr. Banit wrote that Plaintiff would be kept out of work "for the time being." Tr. 277.

Dr. John Martin, a physician at the Pain Clinic at Oconee Memorial Hospital, administered an epidural steroid injection on January 17, 2005. Plaintiff reported that his pain was ten on a scale of one to ten and Darvocet was the only thing that gave him pain relief. Dr. Martin noted that Plaintiff was in no acute distress, had moderate tenderness in his back on palpation, had full range of motion in his back with some pain on motion, and was able to ambulate with a normal gait. Tr. 270-271.

On February 11, 2005, Plaintiff told Dr. Banit that he would like to return to work in the next few weeks. Dr. Banit thought that Plaintiff should continue therapy and try to get back to work in early March. Tr. 275. On February 17, 2005, Plaintiff reported to Dr. Martin that the epidural provided two days of excellent pain relief, but the pain returned thereafter. He stated that Darvocet continued to provide adequate pain relief. Another injection was administered. Tr. 267-268. A third epidural injection was given on March 11, 2005. Tr. 265. On April 8, 2005, Plaintiff reported to Dr. Banit that he was having difficulty at work with significant levels of back pain. Tr. 274. Following a discogram in April 2005, Dr. Banit opined that none of the findings indicated a need for surgery.

He said that Plaintiff was relegated to pain management and referred Plaintiff back to Mr. Ramirez for follow-up. Tr. 272.

In May 2005, Plaintiff experienced an episode of extreme confusion followed by continued confusion and short-term memory loss. He was initially treated at a North Carolina emergency room after being found wet and confused at a convenience store. A CT scan was normal. Tr. 281-290. On May 12, 2005, Plaintiff was admitted to Oconee Memorial Hospital after he continued to have confusion and impaired concentration and attention. Tr. 293. An MRI and an EEG were normal. Tr. 323, 334. Plaintiff reported that he might have taken an overdose of his medications (Darvocet and Xanax). He was discharged against medical advice the next day and directed to follow up with his primary care provider. Tr. 293-294.

On May 16, 2005, Mr. Ramirez noted that Plaintiff had normal intellect and memory with no neurological symptoms, but with moderate, sporadic memory disturbance. He scheduled an MRI and referred Plaintiff to a neurologist. Tr. 315. The MRI was negative. Tr. 309. On May 21, 2005, Mr. Ramirez assessed that Plaintiff had a moderate concussion and two episodes of altered mental state. Tr. 318.

Plaintiff was treated by Dr. Jerry Sherrill, a neurologist, in May and June 2005. Tr. 326-329. At his initial visit, Plaintiff was alert and oriented, but had anxiety and poor recall. Dr. Sherrill diagnosed Plaintiff with an "unusual episode of poor memory and amnesia" and ordered an EEG, polysomnograph (sleep study), and blood testing. Tr. 329. In May, Plaintiff reported he was doing well with no return of symptoms. The EEG and laboratory results were negative. Dr. Sherrill diagnosed Plaintiff with an episode of amnesia probably due to stress, fugue state, and minor head trauma which seemed to all have resolved. He indicated that if the polysomnograph was negative,

6

Plaintiff would be released back to his primary care provider. Tr. 326-327. The polysomnograph showed mild obstructive sleep apnea. Tr. 333.

Dr. Spurgeon Cole, Ph.D., a psychologist, examined Plaintiff on October 31, 2005 at the request of the Commissioner. Dr. Cole noted that Plaintiff's mental status was somewhat confused, with problems concentrating and poor attention span. He described Plaintiff's behavior as inappropriate and child-like. Dr. Cole opined that "at the present time, I do not think [Plaintiff] is able to concentrate well enough to complete a task in a timely manner." He also thought that Plaintiff should not interact with the public. Tr. 340-343.

On November 17, 2005, Plaintiff was seen by Mr. Ramirez for a check-up and medication refill. He reported that he had a severe backache. Mr. Ramirez noted that Plaintiff's back was tender to palpation, assessed degenerative disc disease, and renewed Plaintiff's Darvocet. Tr. 375. On a form completed November 18, 2005, Mr. Ramirez indicated that Plaintiff's thought processes were intact, his thought content was appropriate, and his concentration and memory were adequate. He also indicated that Plaintiff's mood was worried and anxious. Tr. 353. On December 6, 2005, Mr. Ramirez noted that Plaintiff had normal intellect and memory with no neurological symptoms. Plaintiff's back problems were evaluated and noted to be stable. Tr. 373.

Dr. Carl Anderson, a state agency physician, reviewed the medical evidence in November 2005 and opined that Plaintiff had no exertional limitations on his ability to perform work-related tasks. He indicated, however, that Plaintiff should avoid hazards and only occasionally climb ladders, ropes, and scaffolds. Tr. 345-351.

Dr. Renuka Harper, a state agency psychologist, reviewed the evidence and opined in December 2005 that Plaintiff was moderately limited in his ability to understand, remember, and

carry out detailed instructions; perform activities within a schedule; interact appropriately with the general public; and set realistic goals. She indicated that Plaintiff was not significantly limited in the other areas of functioning. Dr. Harper opined that Plaintiff could remember location and work-like procedures; understand, remember, and carry out short and simple instructions; attend to and perform simple tasks without special supervision for at least 2-hour periods; understand normal work-hour requirements and be prompt within reasonable limits; work in proximity to others without being unduly distracted; make simple work-related decisions; and would function best in a low-stress work environment. Dr. Harper opined that Plaintiff had moderate limitations in the three "B" criteria areas of the Listings: activities of daily living; maintaining social functioning; and maintaining concentration, persistence, or pace. She opined that Plaintiff did not meet or equal any of the Listings of Impairments ("Listings"). Tr. 354-370.

Dr. Robbin Ronin, a state agency psychologist, opined in February 2006 that Plaintiff was moderately limited in his ability to understand, remember, and carry out detailed instructions; interact appropriately with the general public; and set realistic goals. Tr. 408-409. Dr. Ronin's findings were similar to Dr. Harper's, and Dr. Ronin concluded that Plaintiff had the ability to perform "simple, repetitive tasks in a low stress work environment." Tr. 408-410.

In February 2006, Dr. George Chandler, a state agency physician, reviewed Plaintiff's medical records. He opined that Plaintiff was capable of performing medium work with the limitation of only occasional stooping. Tr. 400-407.

Plaintiff's back problems were evaluated by a registered nurse at Oconee Family Practice and found to be stable on February 8, 2006. Tr. 439. On March 7, 2006, Plaintiff requested that Mr. Ramirez complete disability papers for him. Tr. 437. Mr. Ramirez opined that Plaintiff was not

8

employable. Tr. 427-430. In August and November 2006, it was noted that Plaintiff's chronic back problems had been reevaluated and were stable. Tr. 431-432. On February 19, 2007, Plaintiff had a normal range of motion in his back with no spasm or tenderness noted. Tr. 445.

An MRI in August 2007 showed slight disc bulging in Plaintiff's neck at C5-6 and a posterior disc protrusion at C4-5 narrowing the right lateral neural foramen. Tr. 455-456. In December 2007, Plaintiff complained that he had twisted his back and was experiencing excruciating pain. Mr. Ramirez noted muscle spasms in Plaintiff's lower back and provided two injections of Torodol for pain relief. Tr. 468-470.

On December 19, 2007, Plaintiff sought treatment in the Oconee Memorial Hospital emergency room for pain in his knees, legs, ankles, and feet, and pain radiating from his neck down to his right hand. The pain was not accompanied by any weakness or numbness and did not worsen with movement. Neurological examination was normal and Plaintiff had normal strength and symmetric reflexes in his extremities. Plaintiff was diagnosed with right arm pain consistent with cervical radiculopathy and prescribed steroids. He was discharged home and directed to return to his primary care provider. Tr. 458-459.

Plaintiff was seen by Mr. Ramirez on February 1 and March 3, 2008 for medication refills. On March 3, 2008, Mr. Ramirez noted that Plaintiff had normal movement of all his extremities with normal strength, coordination, and gait. Tr. 463-466. Mr. Ramirez completed a "Lumbar Spine Residual Functional Capacity Questionnaire" on May 16, 2008. He opined that Plaintiff's pain and other symptoms would frequently interfere with the attention and concentration needed to perform simple work tasks. Mr. Ramirez also wrote that Plaintiff could walk about one city block without rest or severe pain, sit for approximately ten minutes at a time, and stand for about twenty minutes

9

at a time. He opined that Plaintiff would need one-to-two breaks per hour, would need a cane while engaging in occasional standing or walking, and would miss more than four days of work per month as a result of his impairments. Tr. 474-477.

## **HEARING TESTIMONY**

Plaintiff stated that he worked at West Point Stevens for twenty-two years, where his duties included cutting fitted sheets and running an automatic pillowcase maker. Tr. 34. He stated that he became disabled on September 21, 2004, the date of his motor vehicle accident. Tr. 27. Plaintiff said that he was laid off from work before he was able to return following his injury. Tr. 31-32. He received unemployment benefits and sought work, but no one would hire him. Plaintiff stated that he applied for social security benefits after he was unable to find work. Tr. 29, 31-33.

Plaintiff testified that he had chronic pain every day, bad dizzy spells from his medicine, sharp pain in his back, and a ruptured disk in his neck that caused pain and weakness in his arms and hands. He stated that he swept a bit, did a bit of laundry for not very long, and did very little yard work. Tr. 36, 40.

Plaintiff thought that he could lift about ten pounds, if that much, on an occasional basis without having a lot of pain. He stated that he could not hold onto anything or pick anything up. Plaintiff estimated that he could sit for about thirty minutes at a time, stand in one place for only a few minutes, and walk less than one block before having to sit down. He stated that he sometimes used a cane because of pain and swelling in his left leg and he wore a lower back brace on a daily basis. Plaintiff testified that he had to recline or lie down ten-to-eleven times each day for fifteen-to-twenty minutes at a time because he was dizzy. He said that lying on a hard floor helped his back. Additionally, Plaintiff stated that he had trouble concentrating and had trouble with his

memory and dizziness because of his pain and medication side-effects. He also experienced dizzy spells because of his high blood pressure. Tr. 36, 38-40, 42, 48.

Plaintiff stated that Mr. Ramirez treated him for depression and anxiety. Tr. 42. He reported that he had sleep apnea which was treated with sleeping pills. Tr. 44-45. Plaintiff testified that his medication helped ease his pain some, but not completely. Tr. 46. He stated that his pain at the time of the hearing was ten on a scale of one to ten because riding over in the car made his back "hurt a little bit." Tr. 47.

## DISCUSSION

Plaintiff alleges that the ALJ erred by: (1) according evidentiary weight to a non-evidentiary document; (2) failing to provide a specific function-by-function assessment of Plaintiff's physical capacities; (3) failing to accord at least deference to the opinion statements of treating source, PA Ramirez; (4) failing to properly assess Plaintiff's subjective complaints and pain; and (5) finding that Plaintiff could perform medium work. The Commissioner contends that: (1) the ALJ's findings that Plaintiff did not meet or equal any of the Listings is supported by substantial evidence,[1] (2) the ALJ's RFC determination contained function-by-function analysis in compliance with SSR 96-8P; (3) the ALJ assigned limited weight to the opinion of PA Ramirez because he was not an acceptable medical source and his opinion was not supported by the medical evidence; (4) the ALJ's finding that

---

[1]Substantial evidence is:
> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984); Laws v. Celebreeze, 368 F.2d 640, 642 (4th Cir. 1966). It must do more, however, than merely create a suspicion that the fact to be established exists. Cornett v. Califano, 590 F.2d 91, 93 (4th Cir. 1978).

11

Plaintiff's subjective complaints are not entirely credible is supported by substantial evidence; and (5) the ALJ's finding that Plaintiff could perform medium work is supported by substantial evidence.

### A. Listing of Impairments/Evidentiary Weight

Plaintiff argues that the ALJ erred in relying on a signed form SSA-831 as evidence that he did not meet or equal a Listing at step three of the sequential evaluation process.[2] He asserts that the ALJ erred by giving evidentiary weight to a non-evidentiary document. The Commissioner contends that the ALJ properly relied upon the opinions of Drs. Harper and Ronin that Plaintiff did not meet or equal a mental listing, specifically that he did not meet or equal the listing at § 12.04 (affective disorders).

The ALJ's determination that Plaintiff did not have an impairment or combination of impairments that met or equaled one of the Listings is supported by substantial evidence and correct under controlling law. Plaintiff argues that the ALJ erred by relying on the signed SSA-831 as evidence that Plaintiff did not meet or equal a listed impairment because HALLEX § I-2-1-15(A) provides that this form is a non-evidentiary document. The provision cited, however, gives guidance to the hearing office staff as to what should be selected as exhibits for the claimant's file and included in an exhibit list for the ALJ's approval. It provides that forms SSA-831 are usually identified as proposed exhibits in the Part A section of the claimant's file and that any Psychiatric Review Technique or RFC Assessment forms are placed in Part F (Medical Records) of the file. See

---

[2]In evaluating whether a claimant is entitled to disability insurance benefits, the ALJ must follow the five-step sequential evaluation of disability set forth in the Social Security regulations. See 20 C.F.R. § 404.1520. The ALJ must consider whether a claimant (1) is working (performing substantial gainful employment), (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to his past work, and (5) if not, whether the claimant retains the capacity to perform specific jobs that exist in significant numbers in the national economy. See id.

HALLEX 1-2-1-15(A) and (E). The ultimate decision on whether a claimant meets or equals a Listing is a matter reserved to the ALJ. 20 C.F.R. § 404.1527(e). The ALJ, however, should receive expert opinion with respect to the Listings analysis. SSR 96-6p. A signed form SSA-831 (Disability Determination Transmittal form) or Psychiatric Review Technique Forms may fulfill the need for expert testimony. Id. Here, Drs. Harper and Chandler considered the question of medical equivalence, but found Plaintiff did not meet or equal one of the Listings (Tr. 60-63). See 20 C.F.R. § 404.1526 (The determination of whether a particular medical condition meets or equals a listed impairment is a medical judgment made at the initial and reconsideration stages of administrative review by the Commissioner's designated physicians and consultative medical specialists).

Further, the ALJ did not rely solely on the form SSA-831 in determining that Plaintiff did not meet or equal a Listing. He properly discussed the requirements of Listing 12.04 and considered the treatment records and Plaintiff's activities of daily living in determining that Plaintiff did not meet the "paragraph B" criteria of the listing.[3] See Tr. 13-14.

---

[3]"For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). It is not enough that the impairments have the diagnosis of a listed impairment; the claimant must also have the findings shown in the listing of that impairment. 20 C.F.R. § 404.1525(d); see Bowen v. Yuckert, 482 U.S. 137, 146 and n. 5 (1987)(noting the claimant has the burden of showing that his impairment is presumptively disabling at step three of the sequential evaluation and that the Act requires him to furnish medical evidence regarding his condition). The Commissioner compares the symptoms, signs, and laboratory findings of the impairment, as shown in the medical evidence, with the medical criteria for the listed impairment. Medical equivalence can be found if the impairment(s) is/are at least equal in severity and duration to the criteria of any listed impairment. 20 C.F.R. § 404.1526(a). A claimant has to establish that there was a "twelve-month period...during which all of the criteria in the Listing of Impairments [were] met." DeLorme v. Sullivan, 924 F.2d 841, 847 (9th Cir. 1991)(finding that the claimant's back impairment did not meet the requirements of section 1.05C; remanded on other grounds).

B.  RFC/Medium Work

Plaintiff alleges that the ALJ erred by failing to properly determine his RFC and in finding that he had the RFC for medium work.[4] Specifically, he argues that the ALJ did not perform the "function-by-function" assessment required by SSR 96-8p. Plaintiff contends that the ALJ's conclusion that he can perform medium work is not supported by substantial evidence because he is unable to perform the basic mental demands of unskilled work as evidenced by the statements of Dr. Cole and PA Ramirez. He appears to argue that he cannot perform the exertional demands of medium work because he uses a cane. The Commissioner contends that the ALJ met the requirements of a function-by-function assessment by specifically incorporating the statutory definition of medium work into his RFC finding.

The ALJ's RFC assessment should be based on all the relevant evidence. 20 C.F.R. § 404.1545(a). Social Security Ruling 96-8p requires that the RFC assessment "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and non-medical evidence (e.g., daily activities, observations)." The RFC must "first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis...." SSR 96-8. The ALJ must discuss the claimant's ability to work in an ordinary work setting on a regular work schedule. Id.

Here, the ALJ's RFC assessment and finding that Plaintiff had the RFC for medium work is not supported by substantial evidence. In finding number 5, the ALJ states that Plaintiff has the RFC to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c) with certain

---

[4]"Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c).

14

limitations. He states that the limitations are based on Exhibits 18F and 19F, which respectively are the Physical RFC assessment completed by Dr. Chandler and the Mental RFC Assessment completed by Dr. Ronin. See Tr. 400-411. It may be that the ALJ relied on the findings of these non-examining, non-treating sources in determining Plaintiff's RFC. Although such findings may be substantial evidence to support the ALJ's findings, see 20 C.F.R. §§ 404.1527(f)(2) and 416.927(f)(2); SSR 96-6p ("Findings of fact made by State agency ... [physicians and psychologists]... regarding the nature and severity of an individual's impairments must be treated as expert opinion of non-examining sources at the [ALJ] and Appeals Council level of administrative review."), it is unclear from the record what weight the ALJ gave to these opinions in determining Plaintiff's RFC and why these opinions were given greater weight than that of the medical and psychological treatment providers who treated and examined Plaintiff. Further, the reports that appear to have been relied upon by the ALJ were completed in February 2006 and thus did not take into account Plaintiff's later medical history (including his August 2007 cervical spine MRI showing disc bulging), ongoing treatment at Oconee Family Practice, and PA Ramirez's March 2006 and 2008 opinions.[5] Additionally, there is no mention in the ALJ's decision of either Plaintiff's testimony that he used a cane at times due to pain and swelling in his leg or PA Ramirez's notation (in his March 2008 opinion) that Plaintiff would need a cane while engaging in occasional standing

---

[5] Ramirez is a physician's assistant, and thus not a treating physician nor an "acceptable medical source" under the regulations. 20 C.F.R. § 416.913(a) and (d); 20 C.F.R. §§ 416.913(a) and(d). Accordingly, his opinion is entitled to "significantly less weight ." Craig v. Chater, 76 F.3d 585, 590 (4th Cir.1996). His opinions, however, may provide insight into the severity of the claimant's impairment and how it affects the claimant's ability to function. SSR 06-03p.

or walking. As the use of an assistive device may affect Plaintiff's ability to perform certain tasks, the ALJ should have considered this issue.[6]

## **CONCLUSION**

The Commissioner's decision is not supported by substantial evidence and is not correct under controlling law. It is, therefore, RECOMMENDED that the Commissioner's decision be **reversed** pursuant to sentence four of 42 U.S.C. §§ 405(g) and 1383(c)(3) and that the case be **remanded** to the Commissioner for further administrative action as set out above.

Joseph R. McCrorey
United States Magistrate Judge

August 30, 2010
Columbia, South Carolina

---

[6]There is also no indication that Plaintiff's asserted use of a cane due to balance problems associated with his impairments and the side effects of his medications was considered by the ALJ in determining Plaintiff's credibility.